### B. M. WORSHAM v. FRED VOGTSBERGER.

#### Decided May 4, 1910.

**1.—Officer—Liability for Official Act.**

The superintendent of the insane asylum of the State, in taking charge of valuables found on the person of a patient committed to his care, acts in a ministerial capacity and is liable personally for wrongful disposition thereof.

**2.—Insane Asylum—Regulations.**

The board of managers of the State Insane Asylum, in making laws and regulations for its government by authority of article 94, Revised Statutes, have no power to adopt such as are inconsistent with the Constitution and laws of the State; and a regulation which authorized the superintendent to take charge of money found on the person of one committed to his charge and deliver it to another claiming it adversely to such insane person would be invalid and afford no protection to the officer, if such money was in fact the property of the one from whom it was so taken.

**3.—Same.**

A regulation of the State insane asylum authorizing the superintendent to take charge of valuables found on the person of a patient and to "turn same over to the guardian, relative or friend interested in the patient and who is looking after his welfare" did not authorize him to deliver money so found to a sister of the patient on her claim that it was her own property, stolen from her by him.

Appeal from the County Court of Travis County. Tried below before Hon. Emmet White.

*A. S. Phelps* and *W. L. White,* for appellant.—An insane person can not sue nor testify. Pelham v. Moore, 21 Texas, 756; Mills v. Cook, 57 S. W., 81; Holzheiser v. G. W. P. & T. Ry. Co., 33 S. W., 887.

To sustain a private action against an officer it must be shown that he exercised the power confided to him in a case without his jurisdiction, with malice and with intent to defraud and oppress. Porter v. Haight, 45 Cal., 637; Jenkins v. Waldron, 11 John., 121; 23 Am. & Eng. Enc. Law, 375; Martin v. Mott, 12 Wheaton, 31; Abbott's Trial Evidence (2d ed.), Actions Against Public Officer, p. 247; Lange v. Benedict, 8 Hun, 366, affirmed in 73 N. Y., 12; 29 Cyc., 1444, subject, Officers; Ballerino v. Mason, 83 Cal., 449; Williams v. Weaver, 100 U. S., 547; Roan v. Raymond, 15 Texas, 78; Otis v. Watkins, 9 Cranch, 339; Spitsnoble v. Ward, 64 Ind., 30; Commonwealth v. Haynes, 97 Pa. St., 228; Burton v. Fulton, 49 Pa., 151; Mayor of New York v. Sands, 105 N. Y., 210; Vail v. Ownen, 19 Barb., 23; Walker v. Hollock, 32 Ind., 238; Clough v. Worsham, 74 S. W., 350; Rains v. Simpson, 50 Texas, 495; Goodwin v. Guild, 94 Tenn., 490; Henderson v. Smith, 26 W. Va., 829; Mechem on Public Officers, 667; Downs v. Lent, 6 Cal., 94; Reed v. Conway, 20 Mo., 23.

*Dowell & Dowell*, for appellee.—Appellant without authority of law turned over to another the money of appellee without his consent. As superintendent he had the right to take the money from Vogtsberger as his patient, but no rule or custom of the asylum would authorize him to make an illegal or improper disposition of it. He should have returned it to Vogtsberger when he recovered, or to his guardian.

KEY, CHIEF JUSTICE.—This is a suit by a former inmate of the State Lunatic Asylum at Austin, seeking to recover a judgment against B. M. Worsham for $140, which the plaintiff charges the defendant took from his person and delivered to one Mrs. Moore.

There was a jury trial, which resulted in favor of the plaintiff, and the defendant has appealed. The undisputed testimony shows that the plaintiff was adjudged insane on the 16th day of July, 1906, and was sent to the State Lunatic Asylum at Austin; that the defendant, B. M. Worsham, was then, and up to the time that plaintiff was finally discharged from that institution, the superintendent thereof. In August, 1906, at the request of the plaintiff's sister, Mrs. J. F. Moore, Dr. Worsham furloughed plaintiff, and he left the asylum. On the 24th day of December, 1907, the plaintiff was arraigned and tried upon a charge of lunacy before the county judge of Travis County, and the jury returned a verdict finding that he was partially insane, and that it was not necessary that he should be placed under restraint, and the judge made an order discharging him from custody. Soon thereafter the plaintiff's brother-in-law, J. F. Moore, carried him back to the asylum, stating to one of Dr. Worsham's subordinates that he had returned him from the furlough. Thereupon the subordinate referred to took him in custody as a returned patient, and, upon searching him, found on his person $140, which was delivered to Dr. Worsham, and, under his instructions, placed in a safe and entered upon the books of the institution as a credit to the plaintiff. On the following day Mrs. Moore, the plaintiff's sister,

appeared at the asylum and asked Dr. Worsham if the plaintiff had any money when he was returned to the asylum, and stated that someone had stolen $140 out of her house, and that it was in the room in which the plaintiff slept the night before he was returned to the asylum. Dr. Worsham informed her that that amount of money had been taken from the plaintiff's person. Whereupon Mrs. Moore said that it was her money and asked Dr. Worsham to turn it over to her, which he did, taking her receipt therefor. It was also shown by undisputed testimony that the Board of Managers of the asylum had established a rule which was then in force, as follows: "That whenever any insane person is confined in the State Lunatic Asylum at Austin to have them searched, and whatever money or thing of value is found on the person of such patient shall be taken therefrom and deposited with the superintendent, and it is his duty to keep the same for such patient or turn same over to the guardian, relative or friend interested in the patient and who is looking after his welfare." It was also shown that the plaintiff had been finally discharged from the asylum, the exact date of the discharge not being disclosed.

The verdict of the jury in favor of the plaintiff necessarily involves a finding that the money referred to was his and did not belong to Mrs. Moore. The plaintiff submitted testimony which supports that finding, and the case must be disposed of upon the theory that the money was in fact the property of the plaintiff. It is urgently insisted by counsel for appellant that he is not liable because he was acting in his official capacity. Of course, it is a well settled rule of law that an officer can not be made to respond in damages, or be held otherwise liable, for any mistake he may make when he acts in a judicial or quasi-judicial capacity; but it is equally as well settled that the rule of exemption referred to does not apply to official acts in excess of authority which are in no sense judicial, and are commonly denominated ministerial acts. We think it is quite clear that, in the matters involved in this case, the acts of appellant belonged to the latter class. Money taken from the person of an inmate of the institution under his control had been delivered to him; and, unless authorized by law, or a valid rule of the Board of Managers, he had no authority to deliver it to any other person who was claiming it adversely to the inmate from whom it had been taken. It is a well settled rule of law that a writ which is void on its face will not protect and exempt from liability a sheriff or other ministerial officer who makes an arrest or seizes property under such void writ, although such officer acts in the utmost good faith, fully believing that the writ requires him to do the act complained of. It has also been held that where a ministerial officer acts in pursuance of a statute, such statute, if unconstitutional, will afford no protection. (Mechem on Public Officers, sec. 662, and authorities there cited.) But it is contended on behalf of appellant that, while there was no statute expressly authorizing the course pursued, there is a statute which authorizes the Board of Managers to make rules and regulations for the government of the asylum, and that the rule or regulation which was proved in this case justified appellant in

delivering the money to Mrs. Moore, although it was not in fact hers, but belonged to the plaintiff. It is provided by article 94 of the Revised Statutes that the Board of Managers of the State Asylums shall have power to make all necessary by-laws and regulations, not inconsistent with the Constitution and laws of this State, for the government of such institutions, officers, employes and inmates, and for the admission of visitors. While it was not necessary to do so, it will be observed that the Legislature, in conferring the power to make necessary by-laws and regulations, expressly limited the power of the Board of Managers to make only such by-laws and regulations as were consistent with the Constitution and laws of this State. It is a well settled rule of law that while a ministerial officer, in possession of property lawfully received, is not an insurer of its safety, he is required to exercise reasonable and ordinary care and diligence to keep and preserve it, in order that it may be restored to the person entitled to it or disposed of in the manner directed by law. (Mechem on Public Officers, sec. 760.) That rule of the common law was in force at the time the Board of Managers established the regulation relied on in this case, and if that regulation conflicts with that rule of law, the regulation must, to that extent, be regarded as void and of no effect, and can not avail appellant as a defense in this case.

However, we do not hold that the regulation referred to goes to that extent. It requires patients entering the asylum to be searched, and whatever money or other things of value may be taken from their persons is to be deposited with the superintendent; and it is made his duty to keep the same for such patient or turn it over to the guardian, relative or friend interested in the patient and who is looking after his welfare. It would seem that, by the very terms of the regulation, the superintendent is not authorized to deliver such property to any relative or friend, *other than those interested in the patient and looking after his welfare.* In the present case, while Mrs. Moore was the plaintiff's sister, she did not present herself as a relative or friend interested in and looking after his welfare. On the contrary, she disclosed the fact that she was acting in her own behalf and adversely to the welfare and interest of the plaintiff. If she had presented herself to appellant as the plaintiff's sister, and had recognized his right to the money and asked to have it delivered to her for and on his behalf, then the transaction would have been within the rule and regulation referred to. But, instead of doing that, she presented an adverse claim, charged the plaintiff with having stolen the money from her, and requested that appellant deliver it to her upon the ground that she was its rightful owner.

It does not seem to us that these facts bring the case within the purview of the rule invoked by appellant. But, as before said, if the rule goes to the extent of authorizing the superintendent to take the property of a patient of that institution and deliver it to any other person not acting for and on behalf of the patient, but asserting adverse ownership, then such regulation is not only inconsistent with the general rule of the common law, which requires an officer to exercise ordinary care and diligence to preserve property in his custody, but would be violative of those constitutional guaranties

which prohibit the taking of any person's property without due process of law.

There are some other questions in the case, all of which have been duly considered, and our conclusion is that no reversible error has been shown and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*